UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

**CHELSEY NAPPER, ET AL.**                                                                 **PLAINTIFFS**

v.                                                                                          No. 3:21-cv-320-BJB

**JOSHUA JAYNES, ET AL.**                                                                  **DEFENDANTS**

<u>**MEMORANDUM OPINION & ORDER**</u>

This case is the second brought by Breonna Taylor's neighbors alleging that Louisville Metro Government and its police officers violated their rights under federal and state law by shooting into their apartment. The main difference between this case and the Plaintiffs' first is that they now sue two new officers (Wes Barton and Kyle Meany) and one this Court dismissed from the initial suit (Joshua Jaynes). But the underlying acts and injuries alleged here are practically identical to those described in the first suit.

Are the Plaintiffs entitled to a second bite at the apple? Not against the Defendants they already sued. That is because a final judgment in the first case would foreclose the availability of relief in this second case under the rule against splitting claims across multiple lawsuits. That doctrine reflects common-sense concerns for judicial efficiency, finality, and consistency. So if the Plaintiffs are to recover from these repeat Defendants, they must do so in the initial suit. As to the new Defendants, however, the Plaintiffs at least have a chance to show that some of their claims weren't filed too late to proceed.

**I.     The First Lawsuit**

In the first case, which remains ongoing, Plaintiffs brought similar claims against Jaynes, the Louisville Metropolitan Government, and several other defendants not sued in this case. *See Napper, et al. v. Hankison, et al.*, No. 3:20-cv-764. They sued in state court, naming Jaynes as a defendant, but not including any allegations about what he did or how he violated their rights. *See id.* The Plaintiffs didn't name Barton or Meany as defendants.

A number of procedural maneuvers followed. Plaintiffs amended their complaint twice in state court. DN 1-3; DN 1-4. But they didn't add any allegations about Jaynes, and didn't name Barton or Meany. Then the Defendants removed the case to federal court. DN 1. And the Plaintiffs filed a second amended complaint in the federal docket. DN 8. This new complaint still did not describe Jaynes's alleged

1

conduct or name him in any of the eleven specifically enumerated causes of action. So Jaynes filed a motion to dismiss. DN 12.

At a hearing on that and several other motions, Plaintiffs' counsel admitted the second amended complaint was "inartfully drafted." Hearing Transcript (DN 61) at 6:13–7:8. He orally requested leave to file a third amended complaint. *Id.* at 28:8–22, 29:1–7. But given the complexity of this case and the number of amendments, the Court asked Plaintiffs' counsel to file a written motion. *See id.* at 29:11–15. Meanwhile, the Court dismissed Jaynes from the first lawsuit based on the lack of allegations against him. DN 67. Plaintiffs then submitted a written motion for leave to file a *third* amended complaint. DN 68. That motion remains pending. *Id.*

## II. This Second Lawsuit

Two months after the Court dismissed Jaynes from the first suit, and a day before Plaintiffs apparently thought the statute of limitations might expire, Plaintiffs filed this separate lawsuit (No. 3:21-cv-320) against Jaynes only. Two days later, Plaintiffs amended the complaint to add three other defendants: Detective Wes Barton, Sergeant Kyle Meany, and the Louisville Metro Government. DN 6. But both the initial and amended complaints described the same basic story and legal claims as the first suit had alleged: Louisville Metro officers violated the U.S. Constitution and Kentucky tort law by negligently obtaining a no-knock warrant and precipitating a shoot-out that caused bullets and dry wall to fly inside their apartment.

As to Jaynes, the allegations in this second case plainly mirror those in the first. (They go beyond the allegations of the first three complaints, of course, which was effectively a null set, resulting in his dismissal.) The allegations here track the account of Jaynes's alleged role offered in the third motion to amend in the first case: both claim that Jaynes incorrectly calculated a "risk assessment" and incorrectly executed an affidavit that were used to support the application for a no-knock search warrant on Taylor's apartment. *Compare* Motion to Amend, No. 3:20-cv-764 (DN 68) ¶ 3, *with* First Amended Complaint, No. 3:21-cv-320 (DN 6) ¶¶ 41–42, 45.

As to Meany and Barton, this lawsuit's allegations similarly mirror those raised against other Louisville Metro Police Department defendants in the first suit: they failed to supervise subordinates, incorrectly filled out a risk-assessment form, and created an unreasonable risk of danger to Plaintiffs. *See* First Amended Complaint ¶¶ 51, 56, 63, 64. The first lawsuit raised similar allegations against a different LMPD supervisor. Second Amended Complaint, No. 3:20-cv-764 (DN 8) ¶ 55 ("Lt. Jerry Huckleberry approved the 'No-Knock' warrant requested by Defendant Jaynes and then was negligent in all supervision and follow-up with respect to training and protocol pursuant to LMPD Standard Operating Procedures.").

And as to the Metro Government, this suit alleges that the city failed to "properly train and supervise defendants … to follow [police department] Standard Operating Procedures." First Amended Complaint, No. 3:21-cv-320 (DN 6) ¶ 3. Plaintiffs asserted that exact claim against the Metro Government in the first lawsuit, where it remains pending. Second Amended Complaint, No. 3:20-cv-764 (DN 8) ¶ 3.

All the Defendants have moved to dismiss this second lawsuit, whose serious allegations the Court of course accepts as true at this stage. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). They contend this suit impermissibly duplicates the first one (known in legalese as "claim-splitting") and was filed too late anyway.[1] *See* Louisville Metro, Barton, and Meany Motion to Dismiss (DN 14); Jaynes Motion to Dismiss (DN 15).

And the Defendants are largely right. The law bars Plaintiffs from pursuing the same allegations in multiple lawsuits. So Plaintiffs may not sue Jaynes or Louisville Metro a second time for acts it already targeted in another pending lawsuit. And the claims filed against Barton and Meany are too late, at least with respect to the adult Plaintiffs. One set of claims, however, is not obviously subject to the same deadline: those brought on behalf of the minor children, one of whom was not born until after the shooting. The parties' briefing doesn't clearly address the timeliness of those claims, so the Court declines to dismiss them at this time and instead orders the parties to submit supplemental briefing on this question.

## III. Claim Splitting

Were the Plaintiffs free to file a second lawsuit, against overlapping sets of Defendants, seeking compensation based on the same shots LMPD officers fired into their apartment? The legal principle known as "res judicata" generally prevents plaintiffs from filing more than one lawsuit based on a common set of facts. This "ancient rule," which "predates the Republic," holds that "parties should not be permitted to relitigate issues that have been resolved." *See San Remo Hotel, L.P. v. City & County of San Francisco*, 545 U.S. 323, 336–37 (2005); *Comm. to Impose Term Limits on Ohio Sup. Ct. & to Preclude Special Legal Status for Members & Emps. of the Ohio Gen. Assembly v. Ohio Ballot Bd.*, 885 F.3d 443, 447 n.1 (6th Cir. 2018). The rule applies both to claims that were actually advanced in a prior case, *see Hapgood v. City of Warren*, 127 F.3d 490, 493–94 (6th Cir. 1997), and to those that "should have been advanced in an earlier suit" but were not, *Wheeler v. Dayton Police Dep't*, 807 F.3d 764, 766 (6th Cir. 2015) (quotation omitted). Either way, a party doesn't get a do-over. *Montana v. United States*, 440 U.S. 147, 153 (1979); *Bragg v. Flint Bd. of Educ.*, 570 F.3d 775, 776 (6th Cir. 2009).

---

[1] Jaynes also argues the legal merits of the allegations against him. *See* DN 15-1 at 6. But the Court needn't reach those issues given the dismissal of the claims on other grounds.

An earlier judgment is "res judicata," and a later claim subject to dismissal, if a defendant shows: (1) "a final judgment on the merits" in the prior case; (2) "a subsequent suit between the same parties or their privies;" (3) an issue in the second lawsuit that should have been raised in the first; and (4) claims in both lawsuits that arise from the same transaction. *Wheeler*, 807 F.3d at 766 (quotation omitted). This doctrine (also known as claim preclusion) serves important efficiency interests. It stops "parties from relitigating the same disagreement in perpetuity" and protects the finality of judgments. *CHKRS, LLC v. City of Dublin*, 984 F.3d 483, 490 (6th Cir. 2021). And it "prevents inconsistent decisions, encourages reliance on adjudication by minimizing the *possibility* of inconsistent decisions, and conserves judicial resources." *Scott v. Haier US Appliance Solutions,* No. 3:21-cv-141, 2021 WL 4822835, at *3 (W.D. Ky. Oct. 15, 2021) (emphasis added) (quoting 18 MOORE'S FEDERAL PRACTICE § 132.01[2] (3d ed. 2021)).

What if the second lawsuit is filed before the first ends? In that circumstance the plaintiff is still generally out of luck. Under an offshoot of res judicata known as "claim splitting," a party must "assert all of its causes of action arising from a common set of facts in one lawsuit." *Waad v. Farmers Ins. Exch.*, 762 F. App'x 256, 263 (6th Cir. 2019) (Moore, J., concurring) (quoting *Katz v. Gerardi*, 655 F.3d 1212, 1217 (10th Cir. 2011)). The upshot is that a plaintiff "must join all claims arising from the same set of facts in a single proceeding and cannot split them across multiple fora." *Ellis v. Gallatin Steel Co.*, 390 F.3d 461, 479 (6th Cir. 2004). A district court facing a plaintiff's split claim is "permit[ted] … to dismiss a second action grounded in that same set of facts." *Church Joint Venture, L.P. v. Blasingame*, 817 F. App'x 142, 146 (6th Cir. 2020) (citing RESTATEMENT (SECOND) OF JUDGMENTS § 25 (1982)); *see Twaddle v. Diem*, 200 F. App'x 435, 439 (6th Cir. 2006) ("[P]laintiffs engage in claim-splitting at the peril of having one case barred by the decision in the other.").

Claim splitting addresses the first of the four elements of the res judicata test: finality. Almost by definition, no "final judgment on the merits" exists if the second suit is filed while the first remains underway. But that sequence could frustrate courts' interests in orderly, consistent, and efficient litigation in many of the same ways as a second suit filed after a final judgment. To avoid this circumvention, the rule against claim splitting operates "[e]ssentially … the same as res judicata, but with a presumption of a final judgment instead of an actual final judgment." *Waad*, 762 F. App'x at 260 (majority op.). "In dealing with simultaneous actions on related theories, courts"—including the Sixth Circuit—"express principles of 'claim splitting' that are similar to claim preclusion, but that do not require a prior judgment." *Id.* at 263 (Moore, J., concurring) (quoting 18 WRIGHT & MILLER, FEDERAL. PRACTICE. & PROCEDURE. § 4406 (3d ed. 2016)).

Instead, those courts ask "whether the first suit, assuming it were final, would preclude the second suit." *Id.* at 260 (majority op.). If so, then the district court may

4

stay or dismiss the duplicative suit in accordance with "its general power to administer its docket." *Id.* As the Second Circuit has explained, "plaintiffs have no right to maintain two actions on the same subject in the same court, against the same defendant at the same time." *Curtis v. Citibank N.A.*, 226 F.3d 133, 139 (2d Cir. 2000). Many of the same concerns with duplicative litigation that animate related abstention rules, *see Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976), apply with equal force here.

Whether the claim-splitting principle precludes "duplicative litigation" in this case depends on the Defendant at issue.

**A. Louisville Metro and Jaynes.** The rule against claim splitting precludes the Plaintiffs' second round of claims against all the Defendants also named in the first suit. This follows from a straightforward application of the four-part preclusion test described above.

*First*, the claim-splitting doctrine tells us to presume "a final judgment on the merits." *Wheeler*, 807 F.3d at 766 (quotation omitted).

*Second*, the "subsequent suit" involved "the same parties" as the first. *Id.* (quotation omitted). In the first suit, the plaintiffs named Louisville Metropolitan Government and Jaynes as defendants, served them with complaints, and responded to their motions to dismiss. *See* 3:20-cv-764, DN 12 (Jaynes Motion to Dismiss), DN 32 (Louisville Metro Motion to Dismiss).

*Third*, issues necessary for Plaintiffs to prevail in the first action were also raised in this second case. *Wheeler*, 807 F.3d at 766. To prevail in the first suit against Louisville Metro, the Plaintiffs alleged that the Government "had a duty to properly train, supervise, and discipline … employees and agents" but "breached that duty" by "improperly training," "failing to investigate allegations of excessive force," "and "failing to discipline officers." Second Amended Complaint, 3:20-cv-764 (DN 8) ¶¶ 141–42. The second suit included those same allegations—verbatim. *See* First Amended Complaint, 3:21-cv-320 (DN 6) ¶¶ 163–64. And in both suits, Plaintiffs allege Louisville Metro violated the federal Constitution's Establishment Clause by "[t]raining officers they are Biblical avengers who carry out God's wrath." *Compare* Second Amended Complaint, 3:20-cv-764 (DN 8) ¶ 142, *with* First Amended Complaint, 3:21-cv-320 (DN 6) ¶ 164. Likewise with Jaynes: the Plaintiffs alleged he was negligent, reckless, and breached his duty of care in filling out the affidavit used to obtain a search warrant. *See* Second Amended Complaint, 3:20-cv-764, (DN 8) ¶¶ 175–77. They raise those exact issues in this case too. *See* First Amended Complaint, 3:21-cv-320, (DN 6) ¶¶ 41–42, 45, 54, 56, 62, 64. The issues raised in Plaintiffs' claims against Jaynes and Louisville Metro overlap in each case. *See Kaufman v. BDO Seidman*, 984 F.2d 182, 184–85 (6th Cir. 1993) (affirming dismissal in light of similar Michigan preclusion principles because the issue of causation in

the second case had been decided in a prior case); *Gilbert v. Ferry*, 413 F.3d 578, 581 (6th Cir. 2005) (affirming dismissal because "Plaintiffs presented the same arguments and evidence in both claims"); *Nguyen ex rel. United States v. City of Cleveland*, 534 F. App'x 445, 450 (6th Cir. 2013) (same).

*Fourth*, the claims in both lawsuits arise from the same transaction. *Wheeler*, 807 F.3d at 766. The caselaw asks about an "identity" between the causes of action, though that refers not to legal labels but instead to "the facts creating the right of action and … the evidence necessary to sustain each action." *Sanders Confectionery Prods., Inc. v. Heller Financial*, 973 F.2d 474, 484 (6th Cir. 1992) (quotation omitted); *Browning v. Levy*, 283 F.3d 761, 774 (6th Cir. 2002) ("claims arose out of the same transaction or series of transactions, or … the same core of operative facts" (quotation omitted)). Plaintiffs' own pleadings prove the overlap of the facts and evidence necessary for them to prevail. Both lawsuits emerge from the search warrant for Breonna Taylor's home and how its execution led to shots that entered the neighboring apartment. *See* Second Amended Complaint, 3:20-cv-764 (DN 8); First Amended Complaint, 3:21-cv-320 (DN 6). Plaintiffs allege that Louisville Metro failed to effectively train and supervise officers, violated the Establishment Clause, and transgressed Kentucky tort law. *See* Second Amended Complaint, 3:20-cv-764 (DN 8) ¶¶ 114–127; First Amended Complaint, 3:21-cv-320 (DN 6) ¶¶ 158–192. And in both lawsuits Plaintiffs claim Jaynes negligently filled out a risk-assessment form and failed to follow standard operating procedure in seeking a search warrant. *Compare* Second Amended Complaint, 3:20-cv-764 (DN 8) ¶¶ 51–52, 60–63, 89–92, 175–77, *with* First Amended Complaint, 3:21-cv-320 (DN 6) ¶¶ 41–42, 45, 54, 56, 62, 64. The allegations and evidence required to prove the claims in each case are substantially the same and thus satisfy the fourth preclusion prong.

Neither of Plaintiffs' counterarguments works.

As to the first, Plaintiffs argue that the claims against Jaynes don't duplicate the first case because Jaynes was dismissed. *See* Plaintiffs' Response to Jaynes MTD (DN 17) at 3–4. This misunderstands claim-splitting. The question is not whether the duplicative party remains active in the prior case, or litigated to the bitter end, but "whether, assuming the first suit was already final, the second suit would be precluded under res judicata analysis." *Katz*, 655 F.3d at 1219. And a dismissal of a claim against a defendant for failure to state a claim "is considered a decision on the merits with full res judicata effect." *Dyer v. Intera Corp.*, 870 F.2d 1063, 1066 (6th Cir. 1989).

The dismissal of Jaynes from the first suit is not a final judgment and not immediately appealable because "[a]n order disposing of fewer than all parties or claims in an action is not" final. *Bonner v. Perry*, 564 F.3d 424, 427 (6th Cir. 2009)

(quotation omitted).² But that doesn't matter because claim splitting *assumes* the first action was litigated to final judgment, and asks whether this second suit would be precluded. *Bragg*, 570 F.3d at 776; *Katz*, 655 F.3d at 1219; *Waad*, 762 F. App'x at 260.

The Sixth Circuit's recent decision in *Waad* clearly illustrates why the earlier dismissal doesn't excuse the later suit. The prior case at issue in that appeal likewise involved the dismissal of claims against fewer than all defendants before final judgment with respect to the rest. And in that case the dismissal was sua sponte. *Id.* at 257–59. No matter, as described by Judge Moore's concurrence, because:

> at the time the district court dismissed the [second] case, any presumed final judgment in the [first] case would include this [earlier] dismissal. Given Plaintiffs' right to appeal the dismissal following final judgment in the 2016 case, Plaintiffs would be consequently barred from bringing any claim arising out of the same transaction or occurrence against the same defendants…. *See Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 399 n.3 (1981) ("The dismissal for failure to state a claim under [Rule] 12(b)(6) is a 'judgment on the merits.'"). Moreover, the fact that Plaintiffs seemingly cured the deficiencies in their 2016 case when they filed their 2017 case does not save their claim. *See Begala v. PNC Bank, Oh., Nat'l Ass'n*, 214 F.3d 776, 780 (6th Cir. 2000) ("The law does not allow [the plaintiff] the luxury of returning to federal court with the same set of facts until he succeeds in alleging a federal cause of action.").

*Id.* at 263–64 (Moore, J., concurring). As the concurrence went on to explain, "[i]t is well-settled that a plaintiff may not use the tactic of filing substantially identical complaints to expand the procedural rights he would have otherwise enjoyed." *Id.* at 264 (quoting *Hartsel Springs Ranch of Colorado v. Bluegreen Corp.*, 296 F.3d 982, 990 (10th Cir. 2002)). That analysis squarely refutes the Plaintiffs' position here.

As to the second counterargument, Plaintiffs contend the presence of two new Defendants—Detective Wes Barton and Sergeant Kyle Meany, neither of whom are parties in the first case—defeats the claim-splitting defense otherwise available to the repeat Defendants. *See* Plaintiffs' Response Brief at 3–4. If true, that would offer many plaintiffs an easy route around the claim-splitting doctrine: just add (or perhaps remove) a defendant and you're free to plead the same facts and claims a second time. The doctrine isn't that flimsy, however. The defense applies only to issues "litigated … *between the same parties*," or their privies. *In re Alfes*, 709 F.3d 631, 638 (6th Cir. 2013) (emphasis added); *see Begala*, 214 F.3d at 779 (asking whether "the second action involves the same *parties*" (emphasis added)). In other

---

² If the Court's dismissal of Jaynes from the first suit proves erroneous on appeal, the claim could theoretically proceed. Just not in this second lawsuit.

words, a court approaches a claim-splitting defense defendant-by-defendant to determine whether the second case should be dismissed with respect to each. *See Richards v. Jefferson County*, 517 U.S. 793, 798 (1996) (final judgment on the merits precludes a second suit against the same party and any party in privity); *Hamilton v. Bartholomew*, 185 F.3d 874, 1999 WL 525904, at *4 (10th Cir. 1999) (dismissing defendants from earlier suit on res judicata grounds while considering the merits of claims against new defendants). Plaintiffs cite no authority indicating the mere presence of Barton and Meany bars dismissal of the duplicative claims against Jaynes and the government.

**B. Barton and Meany.** So the claims against these two new Defendants don't save the Plaintiffs' claims against parties they already sued. But may the Plaintiffs at least proceed against these two new Defendants? As just noted, the analysis is defendant-specific: the claim-splitting defense applies only to issues litigated "*between the same parties*" or their privies. *In re Alfes*, 709 F.3d at 638 (emphasis added); *Begala*, 214 F.3d at 779. And here, the new Defendants face claims in both their official and individual capacities, necessitating separate consideration of each. *See* Plaintiffs' Response to Barton and Meany MTD (DN 16) at 5.

The official-capacity claims are barred by the rule against claim splitting because "[a] government official sued in his or her official capacity is considered to be in privity with the government." *Heike v. Cent. Mich. Univ. Bd. of Trs.*, 573 F. App'x 476, 481 (6th Cir. 2014) (quotation omitted). And the Plaintiffs obviously already sued the government. So the Court must dismiss the official-capacity claims against Barton and Meany, which amount to a redundant follow-on suit against Louisville Metro. *Id.*; *Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) ("Individuals sued in their official capacities stand in the shoes of the entity they represent."). As explained above, the doctrine of claim-splitting assumes a final judgment, and the other three prongs of claim preclusion are satisfied with respect to these officers in their official capacity to the same extent they are satisfied for Louisville Metro. *See* above at § III.A; *Waad*, 762 F. App'x at 260.

But no privity, and therefore no claim preclusion, exists with respect to the individual-capacity claims. The Sixth Circuit and the Restatement of Judgments make clear that a suit against defendants in one capacity doesn't necessarily preclude a further suit against them in another: "[t]he rule of differing capacities generally operates to allow a subsequent individual capacity suit against a governmental official even where a prior suit alleged an official capacity claim against the same official." *Mitchell v. Chapman*, 343 F.3d 811, 823 (6th Cir. 2003) (reversing district court's application of claim preclusion to individual-capacity suits) (collecting cases and citing RESTATEMENT (SECOND) OF JUDGMENTS § 36(2) (1982)); *see also* 18A Wright & Miller, FEDERAL PRACTICE & PROCEDURE § 4458 (3d ed. 2021) ("The relationships between a government and its officials justify preclusion only as to litigation undertaken in an official capacity."). And other than general reference to the claim-

splitting defense, neither Barton nor Meany make any argument that they are in privity with the defendants from the first suit. *See* Barton and Meany Motion to Dismiss (DN 14-1) at 7–8. Therefore the Government's claim-splitting defense does not apply to these claims against the individual officers.

## IV. Statute of limitations

### A. Commencement of the Statute of Limitations

But were the individual-capacity claims timely filed against Barton and Meany? These unreasonable-force claims arise under state tort law, the Fourth Amendment, the Ninth Amendment, and the Fourteenth Amendment. In Kentucky, personal-injury suits are governed by a one-year statute of limitations. KRS § 413.140(1)(a); *Collard v. Ky. Bd. of Nursing*, 896 F.2d 179, 182 (6th Cir. 1990). And under federal law, § 1983 "provides a vehicle for vindicating the rights found in the Constitution." *Dibrell v. City of Knoxville*, 984 F.3d 1156, 1160 (6th Cir. 2021). It does not include its own statute of limitations, though its neighboring provision (§ 1988(a)) directs courts to borrow the statute of limitations from the relevant state personal-injury tort applicable to constitutional violations. *See id.* at 1161. So "[t]he constitutional claims asserted [against the defendants] under 42 U.S.C. § 1983 are governed by the state personal injury statute of limitations." *Fox v. DeSoto*, 489 F.3d 227, 233 (6th Cir. 2007). Which means plaintiffs must sue "within one … year after the cause of action accrued. *Collard*, 896 F.2d at 181 n.2 & 182 (recognizing the applicability of KRS § 413.140(1) to personal-injury actions brought under § 1983). So both the constitutional claims and the state tort claims are governed by the one-year limitations period set forth in KRS § 413.140.

The parties dispute the date when the Plaintiffs' claims accrued and started that one-year countdown: when the Plaintiffs knew of the injury, or when they knew of specific defendants who allegedly *caused* that injury? Barton and Meany Motion to Dismiss at 12–14; Response to Barton & Meany MTD at 3–5. For the state-law claims, Kentucky follows the "discovery rule," under which a cause of action begins to accrue when the plaintiff discovers the injury. *Fluke Corp. v. LeMaster*, 306 S.W.3d 55, 60 (Ky. 2010). As for the federal-law claims, precedent instructs that courts look to federal rather than state law. Although the length of the limitations period is governed by state law, the "accrual date of a § 1983 cause of action is a question of federal law that is *not* resolved by reference to state law." *Wallace v. Kato*, 549 U.S. 384, 388 (2007). A federal claim, such as a constitutional tort under § 1983, generally "accrues when the plaintiff has a complete cause of action" that can be raised in court. *Dibrell*, 984 F.3d at 1162 (citing *McDonough v. Smith*, --- U.S. ----, 139 S.Ct. 2149, 2155 (2019); *Wallace*, 549 U.S. at 388).

Under binding precedent of the Sixth Circuit, however, the competing "discovery" accrual rule applies to § 1983 claims: as with the state claims, the federal

cause of action doesn't accrue until the plaintiff knows or should know of the claim. *Id.* (citing, *e.g.*, *King v. Harwood*, 852 F.3d 568, 578 (6th Cir. 2017)). "A plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence." *Johnson v. Memphis Light Gas & Water Div.*, 777 F.3d 838, 843 (6th Cir. 2015) (quotation omitted). Under this "objective" test, courts in the Sixth Circuit consider "what event should have alerted the typical lay person to protect his or her rights." *Id.* (quoting *Hughes v. Vanderbilt Univ.*, 215 F.3d 543, 548 (6th Cir. 2000)).[3]

### B. Adult Plaintiffs

Under the discovery rule, Defendants Barton and Meany explain that the statute of limitations expired on March 13, 2021, one year after the shooting—the date of the injury. *See* Barton and Meany Motion to Dismiss at 12–14.

Plaintiffs don't dispute that they immediately knew of their injuries when the shooting occurred on March 13, 2020. Yet they argue for a modified discovery rule under which a claim would accrue only when parties understood not just their injury, but also who was potentially responsible for that injury. They contend the statute of limitations did not accrue on the claims against Barton and Meany until May 20, 2021, when a *Louisville Courier-Journal* article "put Plaintiffs on notice" of the particular roles of each Defendant in filling out a risk-assessment matrix that led to the warrant that eventually led police to Taylor's apartment. *See* Response to Barton and Meany MTD at 3–5. Under this reading of the law, the statute of limitations would not expire until May 20, 2022, which would make the filing of this suit timely.[4]

But this argument is squarely foreclosed by Sixth Circuit precedent. In *Ruiz-Bueno v. Maxim Healthcare Services*, for example, the plaintiffs "argue[d] that [the] cause of action did not accrue until they knew that they 'ha[d] been hurt *and* who … inflicted the injury.'" 659 F. App'x 830, 834 (6th Cir. 2016) (emphasis in original). The Sixth Circuit declined the plaintiff's invitation to expand the discovery rule: "[t]he statute of limitations commences to run when the plaintiff knows or has reason to know of the *injury* which is the basis of the action," and is "not tolled while a

---

[3] The panel in *Dibrell* acknowledged, but didn't resolve, this tension between the standard and discovery rules because the claim accrued on the same day under either one. *See Dibrell*, 984 F.3d at 1162 (asking whether the Court of Appeals "presumption favoring th[e] discovery rule … represent[ed] a 'bad wine of recent vintage.'" (quoting *Rotkiske v. Klemm*, 140 S. Ct. 355, 360 (2019)).

[4] Seemingly in conflict with this argument, however, Plaintiffs' response brief also refers to Barton and Meany's names appearing in "thousands of pages of documents related to the underlying factual situation," which were "made public by LouMetro and the Louisville Metro Police Department on its public website" earlier than May 20, 2021. Response to Barton and Meany MTD at 3.

plaintiff attempts to identify the correct defendants." *Id.* (quoting *Sevier v. Turner*, 742 F.2d 262, 273 (6th Cir. 1984) and *Dowdy v. Prison Health Servs.*, 21 F. App'x 433, 435 (6th Cir. 2001)); *see also Sevier*, 742 F.2d at 273 (tying accrual date to "injury" and not to discovery of defendant's role in the causal chain); *Dowdy*, 21 F. App'x at 435 (similar). These and other decisions show that a claim accrues and its limitations period begins to run when a plaintiff discover the injury, not the roles of individual defendants in causing the injury.

In this case, the accrual date for the statute of limitations is March 13, 2020, the date the bullets flew into Plaintiffs' apartment. *See* First Amended Complaint ¶ 109 (asserting claims for unreasonable seizure caused when bullets entered home on March 13, 2020). And it was on this day when Plaintiffs became aware of their injuries. Plaintiffs' apparent fogginess about exactly which of the LMPD officers or agents were involved in procuring the warrant is not determinative, because "discovery of the *injury* … is what starts the clock.". *Rotella v. Wood*, 528 U.S. 549, 555 (2000) (emphasis added); *Ruiz-Bueno*, 659 F. App'x at 834; *Sevier*, 742 F.2d at 273.

True, in the context of latent injuries in other statutory contexts, the Sixth Circuit has held that a cause of action does not accrue until the injured party should have "reasonably … discovered [the injury], *or the cause* [of the injury]." *Hicks v. Hines,* 826 F.2d 1543, 1544 (6th Cir. 1987) (Federal Employers' Liability Act); *see Coate v. Montgomery County*, 234 F.3d 1267, 2000 WL 1648131, at *2–3 (6th Cir. 2000) (latent medical injury). On this basis, according to Plaintiffs, the claim shouldn't accrue until the defendant who caused the injury is known. Whatever sense this might make in another context, it cannot overcome the precedent squarely foreclosing an extended discovery rule keyed to defendants, not injuries. *See Fonseca v. Consolidated Rail Corp.*, 246 F.3d 585, 588 (6th Cir. 2001) ("In contrast to the time-of-event rule, the discovery rule is applied when no significant injury is discernable at the time of the tortious event…."). Certainly when, as here, plaintiffs *do* know of their injuries, nothing in the precedents Plaintiffs cite support extending the accrual date.

### C. Minor Plaintiffs

The minor children of the two adult Plaintiffs are also plaintiffs here. In the amended complaint, they (or their parents on their behalf) assert the same Fourth Amendment and negligence claims against Barton and Meany. And they also claim that the Defendants' negligence in completing the risk-assessment matrix led to the resulting shooting, which caused a "rupture of companionship and nurturing interests of their mother, Chelsey Napper" along with a "rupture of the father-child relationship as protected under the Fourteenth Amendment" and the Ninth Amendment. *See* First Amended Complaint ¶¶ 204–08.

11

Barton and Meany assert the same untimeliness defense against all the Plaintiffs. But Plaintiffs respond by pointing to a Kentucky law that tolls the statute of limitations on a child's claims until they reach the age of majority. *See* KRS § 413.170(1). So even if the statute of limitations has run on the adult Plaintiffs' claims, the argument goes, no such obstacle bars the overlapping claims of the two minor Plaintiffs. Aside from simply citing the statute, however, Plaintiffs identify no caselaw applying it to any analogous situation, and none addressing a claim asserted on behalf of a child who was still in utero when the alleged seizure occurred. Nor have Plaintiffs provided any caselaw discussing how an untimeliness defense might apply to a "rupture of the family" claim, even assuming such a claim is cognizable under the U.S. Constitution. Barton and Meany, for their part, haven't pointed to statutory law or precedent indicating how the statute of limitations should apply to the minor Plaintiffs' apparently novel claims, or if these claims are even cognizable.

To avoid misapplying these provisions of state law, the Court orders the parties to file supplemental briefs: Plaintiffs' supplemental brief is due July 29, 2022, and Defendants' response brief (or briefs) are due August 12, 2022.

## CONCLUSION

The Court dismisses Plaintiffs' claims against Defendants Jaynes and Louisville Metro, the official-capacity claims against Defendants Barton and Meany, and the adult Plaintiffs' individual-capacity claims against Barton and Meany. The Court orders supplemental briefing regarding the appropriateness of dismissal of the minor Plaintiffs' claims.

Benjamin Beaton, District Judge
United States District Court

July 8, 2022