# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# LOUISVILLE DIVISION

**CHELSEY NAPPER, ET AL.**                                               **PLAINTIFFS**

**v.**                                                              **No. 3:21-cv-320-BJB**

**JOSHUA JAYNES, ET AL.**                                             **DEFENDANTS**

\* \* \* \* \*

### MEMORANDUM OPINION & ORDER

The Court recently granted and granted in part two motions to dismiss this second lawsuit filed by Breonna Taylor's neighbors. Plaintiffs recently described it as "essentially identical for all intents and purposes" to another suit pending in this District. Motion to Consolidate (No. 3:20-cv-764, DN 112) at 4. While the Defendants' motions to dismiss were pending, Plaintiffs filed six more motions of their own. None is meritorious.

**A. Motions to Stay.** While the motions to dismiss were pending, Plaintiffs requested a stay in order to review evidence gleaned from the state criminal trial of Detective Brett Hankison, a defendant in the federal civil litigation parallel to this suit. DN 24. Plaintiffs subsequently filed an amended motion to stay, DN 25, then a second amended motion to stay, DN 26 at 1, and finally a motion to withdraw, DN 27, the first two filed motions to stay, DNs 24 and 25. Defendants filed nothing in response to this series of motions (though they did respond to parallel motions filed in the parallel litigation).

A district court may stay a case under its inherent power to "control the disposition of the [cases] in its docket." *F.T.C. v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 626 (6th Cir. 2014). "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." *Nken v. Holder*, 556 U.S. 418, 433–34 (2009). In considering whether to grant a stay, a court considers "any prejudice to the non-moving party if a stay is granted," "any prejudice to the moving party if the stay is not granted," and "judicial economy and efficiency." *Tennessee ex rel. Cooper v. McGraw-Hill Cos.*, No. 3:13-193, 2013 WL 1785512, at *6 (M.D. Tenn. Apr. 25, 2013) (quotation omitted). A stay of proceedings is not automatic, even if irreparable injury might otherwise result. *Nken*, 566 U.S. at 433.

Here a stay is inappropriate for at least three reasons. First, Plaintiffs have not identified any actual prejudice they'd suffer if a stay were not entered. They say they'd be disadvantaged if they aren't given time to review the testimony and

1

evidence offered in Detective Hankison's state criminal trial. *See* DNs 24, 25, 26. But this case is at the motion-to-dismiss phase, meaning the Court assumes the veracity of the factual allegations in Plaintiffs' complaint. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The first opportunity the Court would have to consider any *evidence* gained from the state trial won't occur until after discovery and filings on a motion for summary judgment. *See Kostrzewa v. City of Troy*, 247 F.3d 633, 643 (6th Cir. 2001). Second, granting a stay will interfere with the orderly and efficient resolution of this (and potentially related) litigation on a subject matter of significant import. *See McGraw-Hill*, 2013 WL 1785512 at *6. Third, Plaintiffs admit they've already had time to digest the information gained from the state criminal trial, as shown by their filing of their most recent motion to amend. DN 31. The Court therefore grants the motion to withdraw the first two stay motions and denies the third motion to stay as unsupported and unnecessary.

**B. Motion to Change Venue.** The Plaintiffs argue that Louisville has become an inappropriate place to try this case because the Breonna Taylor case is so well known to the public and the media that prior knowledge of prospective jurors may infect the jury pool. *See* DN 28. So they ask the Court to transfer the case to one of the other Western District of Kentucky divisions: Bowling Green, Paducah, or Owensboro. *See id.* at 2.

Whether to grant a motion for a change of venue is a decision that "rests within the sound discretion of the trial court and will not be disturbed absent a clear abuse of discretion." *United States v. Turner*, 936 F.2d 221, 226 (6th Cir. 1991). And the Supreme Court has stated that simply alleging the possibility of "preconceived notion[s] as to guilt or innocence[,] without more," is insufficient "to rebut the presumption of a prospective juror's impartiality." *Dobbert v. Florida*, 432 U.S. 282, 302–03 (1977) (quotation omitted). Indeed, the *Dobbert* Court noted that a case transfer was not required where the movant merely "show[ed] that the community was made well aware of the charges." *Id.* at 303. Instead, the Supreme Court explained that transfer was required only where the jury pool is "utterly corrupted by press coverage." *Id.* (quotation omitted). As the Sixth Circuit has explained, the "merit of a change of venue motion is most likely to be revealed at voir dire of the potential jurors," given that "[e]xposure to publicity alone does not presumptively deprive a [litigant] of his right to fair and impartial jurors." *United States v. Johnson*, 584 F.2d 148, 154 (6th Cir. 1978).

Plaintiffs have made no such showing here. They do not allege total corruption of prospective jurors, but repeatedly highlight "*potential* community prejudice and/or *potential* community bias among jurors." Motion to Transfer at 2 (emphases added). This modest assertion of a hypothetical potential disadvantage is insufficient under *Dobbert*, 432 U.S. at 303, and *Johnson*, 584 F.2d at 154. This motion addresses only the conjectural benefits of transferring the case—none of the costs and disruptions associated with a transfer, and none of the reasons why courts typically adjudicate

cases before a jury of peers in the communities where the disputes arose. This is hardly the only case in which a trial lawyer would ask a jury to award funds payable from their collective tax dollars or criticize how those funds were used in the past. *Contra* DN 28 at 4, 9. Nor do Plaintiffs adequately explain why the jury pools in other Western District of Kentucky divisions would not be similarly affected. To the contrary, the motion contends that "[t]he supervision, training and actions of police and its leadership in one Kentucky community are issues of equal importance to *all* Kentucky communities." *Id.* at 3. The story of the shooting, as we all know, traveled from Louisville across the world, fueling national and even international conversations about police practices. The only concrete, as opposed to conjectural, argument Plaintiffs raise is an extended attack on a state-court jury's acquittal of Defendant Hankison. *Id.* at 5, 8 (repeatedly questioning the verdict on nullification grounds). Without any support in the caselaw, Plaintiffs' counsel invites the federal court to effectively endorse his impeachment of the jury's decision by granting a transfer on that premise. For reasons that shouldn't require any further explanation, the Court must decline this remarkable overture and denies the motion to transfer venue.

**C. Motion to Amend.** Plaintiffs' motion to file a second amended complaint raises several problems. DN 31. First, it asserts claims against no fewer than 12 new parties, many of whom are parties to Plaintiffs' first lawsuit (No. 3:20-cv-764), and therefore subject to the same repeat-litigation rules that formed the basis for the Court's recent dismissal order, *see* DN 32. When Plaintiffs filed the second motion to amend, this case was pending against only Louisville Metro, Sergeant Kyle Meany, and Detectives Joshua Jaynes and Wes Barton. *See* First Amended Complaint (DN 6). The proposed amend complaint, which is a facsimile of a proposed third amended complaint filed in the parallel suit (No. 3:20-cv-764, DN 111), also asserts claims against Detectives Brett Hankison, Myles Cosgrove, Jonathan Mattingly, Anthony James, Mike Nobles, Mike Campbell, and Kelly Hanna Goodlett, along with Lieutenants Shawn Hoover, Jerry Huckleberry, Chief Steve Conrad, Major Kim Burbrink, and Sergeant Luke Phan. *See* Proposed Amended Complaint (DN 31-2) at 1–4.

The motion to amend did not identify any new allegations or theories the proposed amendment would offer; it merely alluded to new sources of evidence that purportedly corroborated Plaintiffs' existing claims. Nor did it explain (much less justify) Plaintiffs' intention to raise new-yet-duplicative claims against new-yet-duplicative defendants who are currently parties only to the first case. *See* DN 31. Plaintiffs instead seem to assume that the two cases are progressing as, in effect, a single consolidated case. A filing in the first suit, as noted above, explained Plaintiffs' view that the two suits are "essentially identical for all intents and purposes." Motion to Consolidate (No. 3:20-cv-764, DN 112) at 4. The Court, for reasons set out in the prior dismissal order, DN 32 at 3–8, largely agrees. But that cuts *against* allowing amendment and adding new parties in this case. As the prior order explained,

3

"plaintiffs have no right to maintain two actions on the same subject in the same court, against the same defendant at the same time." DN 32 at 5 (quoting *Curtis v. Citibank N.A.*, 226 F.3d 133, 139 (2d Cir. 2000)).  Even if a second motion to amend this case were procedurally appropriate, a plaintiff may not duplicate their claims and lawsuits against the same defendants:

> Under an offshoot of res judicata known as "claim splitting," a party must "assert all of its causes of action arising from a common set of facts in one lawsuit." *Waad v. Farmers Ins. Exch.*, 762 F. App'x 256, 263 (6th Cir. 2019) (Moore, J., concurring) (quoting *Katz v. Gerardi*, 655 F.3d 1212, 1217 (10th Cir. 2011)).  The upshot is that a plaintiff "must join all claims arising from the same set of facts in a single proceeding and cannot split them across multiple fora." *Ellis v. Gallatin Steel Co.*, 390 F.3d 461, 479 (6th Cir. 2004).  A district court facing a plaintiff's split claim is "permit[ted] … to dismiss a second action grounded in that same set of facts." *Church Joint Venture, L.P. v. Blasingame*, 817 F. App'x 142, 146 (6th Cir. 2020) (citing RESTATEMENT (SECOND) OF JUDGMENTS § 25 (1982)); *see Twaddle v. Diem*, 200 F. App'x 435, 439 (6th Cir. 2006) ("[P]laintiffs engage in claim splitting at the peril of having one case barred by the decision in the other.").

DN 32 at 4.

The rule against claim splitting would bar Plaintiffs' newly raised claims against these Defendants (claims that are currently pending in Plaintiffs' motion to amend in the first case).  "It is well-settled that a plaintiff may not use the tactic of filing substantially identical complaints to expand the procedural rights he would have otherwise enjoyed." *Waad*, 762 F. App'x at 263–64 (quoting *Hartsel Springs Ranch of Colorado v. Bluegreen Corp.*, 296 F.3d 982, 990 (10th Cir. 2002)).  Therefore the second motion to amend is largely futile.  If Plaintiffs intend to assert specific revised claims against Defendants Barton and Meany, the two Defendants who remain in this case, Plaintiffs might conceivably avoid this futility, at least in part, by filing a *third* motion to amend their complaint that is specific to those remaining Defendants.  Although any such motion would have to explain, under the principles governing amendment as well as the questions left open for supplemental briefing in the Court's prior order, why such an amendment would be appropriate at this stage in the follow-on litigation.

## ORDER

The Court grants the motion to withdraw (DN 27) the first two stay motions (DNs 24 & 25), denies the third motion to stay (DN 26), denies the motion to transfer venue (DN 28), and denies the motion to amend (DN 31).

4

Benjamin Beaton, District Judge
United States District Court

July 12, 2022